## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

---

NIKOLAS WINTERS,

                                                        CV 07-153-M-JCL

                  Plaintiff,

       vs.

                                                     ORDER

COUNTRY HOME PRODUCTS, INC., a
Vermont corporation,
d/b/a DR Power Equipment,

                  Defendant.

---

This matter is before the Court upon Defendant Country Home Products, Inc.'s ("CHP") Motion for Summary Judgment filed June 10, 2009. The Plaintiff, Nikolas Winters, has not filed a response to the motion. In accordance with L.R. 7.1(d)(1)(B), the Court deems Winters' failure to respond as an admission that CHP's motion is well taken.

Upon review of the facts of this case and the evidentiary record before the Court, for the reasons stated below the Court deems it appropriate to grant CHP's motion. This action will be dismissed.

## I.  BACKGROUND

This action stems from injuries Nikolas Winters sustained on June 13, 2005,

while operating a brush mower in the course of his employment with the Candy

Bar Ranch ("CBR") near Kalispell, Montana.  CBR owned the brush mower.[1]

Defendant CHP is a direct marketer of the brush mower that Winters was

using.  CBR ordered the brush mower on August 5, 2004, which CHP delivered

directly to CBR.

When Winters arrived for work on June 13, 2005, his supervisor, Mark

Cahoon, told Winters to use the brush mower to cut tall grass along a fence line.

Winters' co-worker, Donny Church, brought the mower to Winters.  Winters states

that he, Cahoon, and Church did not engage in any discussion about how to

operate the mower.  Cahoon and Church just gave Winters a "blunt idea" about

how to operate the mower, and they told Winters that a lever on the mower's

handle powers the wheels.  Winters knew how to start the mower, and how to turn

it off.  Winters does not remember reading any of the information located on the

mower itself before he began using it.

While Winters was mowing along the fence line the right front corner of the

mower was about to get caught in the fence, so Winters stopped.  Although

Winters could have turned the mower off when he stopped, he did not do so.

Rather, with the blade of the mower engaged, Winters walked around the front of

---

[1]The specific brush mower was a DR Power All-Terrain Field and Brush
Mower.

ORDER - PAGE 2

the mower and grabbed a bar.  As he pulled on the bar, he slipped causing his leg to slide under the mower and into contact with the blade.

Winters commenced this products liability action against CHP seeking compensation for his injuries.  Winters advances claims against CHP based on theories of negligence, strict liability, failure to warn, and breach of warranty.

At the time of manufacture the brush mower was equipped with an Operator Presence Control ("OPC") lever designed by a third party, Magura Controls, and integrated into the design of the brush mower by CHP.  The OPC is designed so that the operator has to actuate the OPC lever on the mower's handle bar to start the engine and engage the blade.  If the operator leaves the operator's position and releases the OPC lever, the engine will shut off to prevent the operator from being injured by the moving blade.  CHP considers the OPC to be a critical safety feature/device on the brush mower.  CHP's Statement of Undisputed Facts at ¶ 22.

According to Carl Eickenberg, CHP's current director of merchandising, the subject mower was manufactured and delivered to CBR with the OPC.  After the subject brush mower was in CBR's possession, however, the OPC purportedly "fell off or was lost during normal use."[2]  CHP's Statement of Undisputed Facts at ¶ 28.

_____

[2]Winters does not remember anything about an OPC lever on the mower.

ORDER - PAGE 3

CBR's employees claim the OPC lever simply fell off.  Eickenberg - familiar with the design of the mower - inspected the mower and found marks on the OPC lever indicating to him that the OPC had been pried off with a tool. Eickenberg stated that "[i]t is incredibly difficult to remove" the OPC lever - "You almost have to break it off."  Deposition of Carl Eickenberg (March 11, 2009) at 73 (Dkt. # 29-4 at 9 of 39).  Eickenberg concluded that someone had to unscrew the OPC lever, take it apart, and put the mower handle back together without the OPC in place.  *Id*.  Eickenberg's opinion, therefore, is that the OPC lever was purposely removed.

Dennis Brickman, CHP's expert witness, investigated and studied the brush mower model that Winters used, and concluded the OPC lever was "intentionally and deliberately removed from the subject mower using a multiple step procedure."  Affidavit of Dennis Brickman (June 3, 2009), Defendant's Liability Expert Disclosure (Dkt. # 29-8 at 13 of 41).

As previously noted, Winters has not filed a response to CHP's motion.

## II.   APPLICABLE LAW

### A.   Summary Judgment

Federal Rule of Civil Procedure 56(c) entitles a party to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either:  (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  A party opposing summary judgment must identify evidence establishing that a dispute as to a particular material fact is genuine.  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id*.  The party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "genuine" if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id*. at 248.

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds as noted in Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

Despite a party's failure to respond to a summary judgment motion, the Court must still evaluate the merits of the motion. A party's mere failure to respond, by itself, does not provide the Court with authority to grant the motion. *See Evans v. Independent Order of Foresters*, 141 F.3d 931, 932 (9th Cir. 1998). Rather, the Court is independently obligated to "carefully evaluate[]" whether there exist genuine issues of material facts which would preclude summary judgment. *See Cristobal v. Siegel*, 26 F.3d 1488, 1495 n.4 (9th Cir. 1994). Even in the absence of a response from the non-moving party, the moving party still bears the burden of demonstrating its entitlement to judgment as a matter of law. *Id*. Nonetheless, a court can grant an unopposed summary judgment motion if the

movant's papers do not reveal a genuine issue of material fact, and are themselves sufficient to warrant summary judgment. *United States v. Real Property Located at Incline Village*, 47 F.3d 1511, 1520 ((9th Cir. 1995), *rev'd on other grounds sub nom*, *Degen v. United States*, 517 U.S. 820 (1996).

**B.    Application of Montana Law**

Because jurisdiction over this action is founded upon diversity of citizenship, the Court applies the substantive law of Montana, the forum state. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).   "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980).  Federal courts "are bound by the pronouncements of the state's highest court on applicable state law." *Appling v. State Farm Mutual Auto. Ins. Co.*, 340 F.3d 769, 778 (9th Cir. 2003) (quoting *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001)).

When an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Medical*

*Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306

F.3d 806, 812 (9th Cir. 2002) (citations omitted).  In doing so, the court must "look

to existing state law without predicting potential changes in that law."  *Ticknor*,

265 F.3d at 939. (citation omitted).  The court should also rely on persuasive

authorities, including treatises and decisions from other jurisdictions, as guidance.

*Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 865 (9th

Cir. 1996).

**III.**   **DISCUSSION**

**A.**   **Negligence**

Under Montana law a plaintiff can assert a products liability claim based on

various theories including strict liability (Mont. Code Ann. § 27-1-719) and

negligence (Mont. Code Ann. § 27-1-701).  *Chapman v. Mazda Motor of America,*

*Inc.*, 7 F. Supp. 2d 1123, 1125 (D. Mont. 1998).  A products liability claim

premised on negligence focuses on the conduct of the defendant, while a claim

premised on a theory of strict liability focuses on the condition of the product.  *Id*.

A negligence action "focuses on the degree of care used by the defendant in design

or manufacture[, and] [t]he standard is measured by the knowledge and conduct of

a reasonable manufacturer under the same or similar circumstances."  *Id*. 7 F.

Supp. 2d at 1126.

ORDER - PAGE 8

A negligence claim requires a plaintiff to prove "the existence of a duty, breach of duty, causation, and damages." *Jackson v. State of Montana*, 1998 MT 46, ¶ 30, 287 Mont. 473, ¶ 30, 956 P.2d 35, ¶ 30.  Summary judgment is appropriate if a plaintiff fails to establish one of the four elements.  *Hagen v. Dow Chemical Co.*, 261 Mont. 487, 492, 863 P.2d 413, 416 (1993).

Other than the allegations in Winters' Complaint, which are not sufficient to oppose summary judgment, the Court finds there are no genuine issues of material fact suggesting CHP breached a duty it owed to Winters.  There is no evidence of record indicating CHP failed to comply with any particular applicable standard or degree of care in the design or manufacture of the brush mower.  Absent a genuine issue of material fact, and absent evidence to establish CHP breached a duty of care, summary judgment in favor of CHP on Winters' negligence claim is warranted.

## B.     Strict Liability

The Montana Legislature has provided a statutory cause of action for products liability premised on a theory of strict liability.  Mont. Code Ann. § 27-1-719.  The statute provides, in relevant part, as follows:

> (2) A person who sells a product in a defective condition unreasonably dangerous to a user or consumer or to the property of a user or consumer is liable for physical harm caused by the product to the ultimate user or consumer or to his property if:

ORDER - PAGE 9

(a) the seller is engaged in the business of selling such a product; and

(b) the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Mont. Code Ann. § 27-1-719(2).

A prima facie case of products liability premised on a theory of strict liability requires a plaintiff to establish the following elements:

(1) The product was in a defective condition, "unreasonably" dangerous to the user or consumer;

(2) The defect caused the accident and injuries complained of; and

(3) The defect is traceable to the defendant.

*Meyer v. Creative Nail Design, Inc.*, 1999 MT 74, ¶ 21, 294 Mont. 46, 975 P.2d 1264.

To establish that a particular product is defective and unreasonably dangerous, a plaintiff must prove "that it is 'capable of causing injury to the user beyond that which would be expected by the ordinary user.'" *McAlpine v. Phone-Poulenc Ag Co*, 2000 MT 383, ¶ 25, 304 Mont. 31, 16 P.3d 1054 (2000) (quoting *Wise v. Ford Motor Co.*, 284 Mont. 336, 340, 943 P.2d 1310, 1312 (1997)).

The alleged defect in a product must be traceable to the defendant - the defendant, as opposed to some other third party, must have created the "defect" that is unreasonably dangerous.  A plaintiff must establish that the "defect existed

when [the product] left the hands of the particular defendant." *Brothers v. General Motors Corp.*, 202 Mont. 477, 480, 658 P.2d 1108, 1109 (1983).

Specifically, Mont. Code Ann. § 27-1-719(2)(b) requires the plaintiff to establish that the "product is expected to and does reach the user or consumer *without substantial change* in the condition in which it is sold." (Emphasis added.)[3]  Under Restatement (Second) of Torts § 402A (1965), as adopted in § 27-1-719, a manufacturer or seller is liable

> only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.  The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed.

Restatement (Second) of Torts § 402A cmt.g (1965).  Section 402A, therefore, provides that a seller will not be liable for injuries caused by a substantial change made to a product by a third party which change is unexpected or unforeseeable to the seller.  *Merriweather v. E.W. Bliss Co.*, 636 F.2d 42, 45-46 (3rd Cir. 1980)

---

[3]The language of Mont. Code Ann. § 27-1-719 is taken from Restatement (Second) of Torts § 402A (1965).  In 1987 the Montana Legislature adopted the provisions of § 402A by enacting Mont. Code Ann. § 27-1-719.  *McAlpine*, 2000 MT 383, ¶ 21; *Wood v. Old Trapper Taxi*, 286 Mont. 18, 24, 952 P.2d 1375, 1379 (1997) (noting that the Montana Supreme Court has also adopted the provisions of Restatement (Second) of Torts § 402A).

ORDER - PAGE 11

(applying Pennsylvania law adopting Restatement (Second) of Torts § 402A).[4]  As a corollary, therefore, a modification or alteration made by a third party that is reasonably foreseeable to a manufacturer will subject the manufacturer to liability for the product.  *Id.*

Numerous jurisdictions have recognized that the foreseeability rule is different, however, when a third party disables, alters, or modifies a specific safety device or safety feature of a product.  A third party's intentional alteration or modification of a product which destroys or defeats the functional utility of a key safety feature or device on the product will relieve the defendant of liability for injuries caused by the alteration or modification, regardless of whether the modification was reasonably foreseeable to the defendant.  *Jones v. Ryobi, Ltd*, 37 F.3d 423, 425 (8th Cir. 1994) (applying Missouri law)[5]; *Magee v. E.W. Bliss Co.*, 120 A.D.2d 926, 927, 502 N.Y.S.2d 886, 888 (N.Y. App. Div. 4th Dept. 1986).

The Montana Supreme Court has not had occasion to address the precise issue of whether the disabling alteration or modification of a key safety device

---

[4]*See also Helene Curtis Industries, Inc. v. Pruitt*, 385 F.2d 841, 856 (5th Cir. 1968) (holding that a subsequent alteration or modification to a product that is unforeseeable to the manufacturer or distributor relieves the defendant from liability for the danger created by the alteration or modification).

[5]Like Montana, Missouri law has also adopted the strict liability rules found in Restatement (Second) of Torts § 402A.  *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 791 (Mo. App. W. Dist. 2009).

may operate to relieve a seller of liability.  This Court has recognized, however, that a manufacturer may defend a products liability claim on the basis that a third party made a modification to a product which constitutes a "substantial change in the condition in which it [was] sold." *Estate of Weaselboy, Sr. v. Ingersoll-Rand Co.*, 1995 WL 307466, * 4 (D. Mont. 1995) (quoting Mont. Code Ann. § 27-1-719(2)(b)).  Thus, a third party's subsequent and substantial modification to a product which created a defect that caused the plaintiff's injuries relieves the defendant of liability.  *Id*. (citing *Brothers v. General Motors Corp.*, 202 Mont. 477, 480, 658 P.2d 1108, 1109 (1983) and Restatement (Second) of Torts § 402A cmt. g (1965)).

It is undisputed that the subject brush mower was manufactured and delivered to Winters' employer, CBR, with the OPC lever in place.  The OPC is a critical safety feature or device on the brush mower because its purpose is to prevent the operator from being injured by the blade of the mower.  The evidence of record establishes that with the OPC lever in place and functioning properly, the brush mower is not unreasonably dangerous.  The evidence of record also establishes the OPC lever was deliberately removed from the mower, and that removal of the lever is incredibly difficult.  Affidavit of Dennis Brickman, Defendant's Liability Expert Disclosure (Dkt. # 29-8 at 13 of 41).  Winters has not

ORDER - PAGE 13

presented any evidence to the contrary.

Furthermore, it is undisputed that the OPC lever on the subject brush mower was removed by someone other than Winters or CHP after CHP delivered the mower to CBR. This removal constituted a substantial modification to the mower which created a defect that caused Winters' injuries.[6]

If the OPC had been in place, the engine would have automatically shut off when Winters left the operator's position thereby stopping the blade from rotating. The removal of the OPC allowed the engine to run when Winters left the operator's position, thereby allowing the blade to continue rotating. As such, the removal of the OPC proximately caused Winters' injuries. The modification and removal of the OPC relieves CHP of liability for Winters' injuries, regardless of whether the removal of the OPC was foreseeable to CHP. Summary judgment in favor of CHP is warranted on Winters' strict liability theory.

## C.     Failure to Warn

"Montana law recognizes a manufacturer's liability for its failure to warn of

---

[6]The Court's conclusion is limited to the facts of this case which establish that removal of the safety device could only have been accomplished by way of a deliberate and difficult process. The ease with which a safety device may be removed - and the manufacturer's knowledge of that ease - could, in an appropriate consumer setting, allow a finding that the ease of removal constitutes a design defect. *See e.g. Liriano v. Hobart Corp.*, 132 F.3d 124, 127-29 (2nd Cir. 1998); *Oquendo v. Bettcher Industries, Inc.*, 939 F. Supp. 357, 363 (D.N.J. 1996) (applying New Jersey law).

ORDER - PAGE 14

a danger in its product as a separate and distinct theory of products liability."

*Wise v. Ford Motor Co.*, 284 Mont. 336, 343, 943 P.2d 1310, 1314 (1997).

Consistent with the elements of strict liability set forth above, a failure to warn

theory

> requires proof that the product was in a defective condition, "unreasonably" dangerous to the user or consumer, that the defect caused the accident and injuries complaint of, and that the defect is traceable to the defendant.

*Wood v. Old Trapper Taxi*, 286 Mont. 18, 28, 952 P.2d 1375, 1382 (1997).

Under a failure to warn theory, a product that is otherwise without a defect

may be rendered unreasonably dangerous if a manufacturer fails to warn of an

injury-causing risk associated with the product. *Wise*, 284 Mont. at 343, 943 P.2d

at 1314. Under those circumstances a product is automatically defective if a

warning is required but not given. *Wood*, 286 Mont. at 29, 952 P.2d at 1382. A

warning is inadequate, and thus the product is defective and "unreasonably

dangerous", if "users have been misinformed or inadequately informed about

either the risks or dangers involved in the use of the product or how to avoid or

minimize the harmful consequences from such risks." *Id.*

The subject brush mower contains several warning labels affixed on it. One

of the labels titled "OPERATE SAFELY..." contained the following instruction:

"Always keep hands and feet clear of blade and other moving parts." CHP's

ORDER - PAGE 15

Statement of Undisputed Facts at ¶ 8.  The brush mower also had a warning decal on the top of the mower deck stating as follows:  "DANGER" - "KEEP HANDS and FEET AWAY".  Affidavit of Dennis Brickman (June 3, 2009), Defendant's Liability Expert Disclosure (Dkt. # 29-8 at 3 of 41).

The warnings adequately inform the user of the risk or danger posed by the blade on the brush mower, and they adequately inform the user how to avoid the harmful consequences of the risk posed by the blade.  Winters has not presented any argument to the contrary.  Therefore, there exists no genuine issue of material fact and CHP is entitled to summary judgment on Winters' failure to warn theory.

### D.    Breach of Warranty

Winters' Complaint advances two breach of warranty claims as follows: (1) breach of the warranty of merchantability, and (2) breach of the warranty of fitness for a particular purpose.

Montana law imposes an implied warranty of merchantability on the sale of goods.  Mont. Code Ann. § 30-2-314.  To be merchantable a good must be "fit for the ordinary purpose for which such goods are used."  *Streich v. Hilton-Davis*, 214 Mont. 44, 59, 692 P.2d 440, 448 (1984).  *See also Rothing v. Kallestad*, 2007 MT 193, ¶¶ 35-36, 337 Mont. 193, 159 P.3d 222 (2007).

The record before the Court establishes that the purpose of the subject brush

mower was primarily for "off-lawn mowing.  To be able to clear overgrown areas of weeds and brush and saplings."  Deposition of Carl Eickenberg (March 11, 2009) at 56 (Dkt. # 29-4 at 6 of 39).  Winters used the brush mower on June 13, 2005, to mow tall grass.  Winters had been mowing with the mower for 2 or 3 hours prior to his accident.  Therefore, the record demonstrates that the subject brush mower was fit for the ordinary purpose for which the mower was to be used. CHP is entitled to summary judgment on Winters' claim alleging a breach of the implied warranty of merchantability.

Under certain circumstances Montana law also imposes an implied warranty of fitness for a particular purpose on the sale of goods.  The warranty applies as follows:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Mont. Code Ann. § 30-2-315.  This warranty applies when the buyer establishes that the seller knew of the particular purpose for which the goods are required. *Streich*, 214 Mont. at 60, 692 P.2d at 448.

The record before the Court does not contain any evidence indicating that CBR advised CHP of any particular purpose for which it needed the brush mower.

ORDER - PAGE 17

Furthermore, there is no evidence that the brush mower failed to serve any

particular purpose.  Accordingly, CHP is entitled to summary judgment on

Winters' claim alleging a breach of the implied warranty of fitness for a particular

purpose.

## IV.   CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that CHP's

Motion for Summary Judgment is GRANTED and this action is DISMISSED.

DATED this 6th day of August, 2009.

 /s/ Jeremiah C. Lynch_____
Jeremiah C. Lynch
United States Magistrate Judge

ORDER - PAGE 18